**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                                 :

                                                                  :          Chapter 11

BICOM NY, LLC, *et al.*,[1]                                             :

                                                                  :          Case No. 17-11906(MEW)

                                            Debtors.          :

                                                                  :          (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND REVISED SECOND AMENDED JOINT PLAN OF LIQUIDATION OF THE DEBTORS AND DEBTORS-IN-POSSESSION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**WILK AUSLANDER LLP**
1515 Broadway, 43rd Floor
New York, New York 10036
Telephone: (212) 981-2300
Eric J. Snyder, Esq.
Eloy A. Peral, Esq.

*Counsel for Debtors and*
*Debtors in Possession*

**MOSES & SINGER LLP**
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 554-7800
Alan E. Gamza, Esq.
Jessica K. Bonteque, Esq.

*Counsel for the Official Committee*
*Of Unsecured Creditors*

Dated:  May 8, 2019

---

[1] The last four numbers of each Debtor's taxpayer identification number are BICOM NY, LLC (9990); ISCOM NY, LLC (1589); and Bay Ridge Automotive Company, LLC (0694).

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

# TABLE OF CONTENTS

**Page**

ARTICLE 1   DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION
OF TIME ................................................................................................ 1
   A.   Scope of Definitions ..................................................................... 1
   B.   Definitions ..................................................................................... 1
   C.   Rules of Construction ................................................................. 13
   D.   Computation of Time. ................................................................. 14
ARTICLE 2   TREATMENT OF UNCLASSIFIED CLAIMS ................................... 14
   2.1   Administrative Expense Claims ................................................. 14
   2.2   Priority Tax Claims .................................................................... 15
   2.3   Allowed DIP Claims .................................................................. 15
ARTICLE 3   CLASSIFICATION OF CLAIMS AND INTERESTS ........................ 15
ARTICLE 4   TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER
THE PLAN ........................................................................................... 16
   4.1   Class 1A:   Priority Non-Tax Claims (BICOM) ....................... 16
   4.2   Class 1B:   Priority Non-Tax Claims (ISCOM) ........................ 17
   4.3   Class 1C: Priority Non-Tax Claims (BRAC) ............................ 17
   4.4   Class 2A: Chase Residual Claim (BICOM) .............................. 17
   4.5   Class 2B: Chase Residual Claim (ISCOM) .............................. 18
   4.6   Class 2C: Chase Residual Claim (BRAC) ................................ 18
   4.7   Class 3A:   General Unsecured Claims (BICOM) ................... 18
   4.8   Class 3B:   General Unsecured Claims (ISCOM) .................... 18
   4.9   Class 3C:   General Unsecured Claims (BRAC) ...................... 19
   4.10   Class 4A: Equity Interest (BICOM) ......................................... 19
   4.11   Class 4B: Equity Interest (ISCOM) .......................................... 19
   4.12   Class 4C: Equity Interest (BRAC) ............................................ 19
ARTICLE 5   ACCEPTANCE OR REJECTION OF THE PLAN ............................ 20
   5.1   Voting Classes ............................................................................ 20
   5.2   Acceptance by Impaired Classes of Claims ............................... 20
   5.3   Deemed Rejection of Plan .......................................................... 20
ARTICLE 6   MEANS OF IMPLEMENTATION OF THE PLAN ............................ 20
   6.1   Conditions Precedent to the Effective Date ............................... 20
   6.2   Vesting of Assets of the Estate .................................................. 21
   6.3   Chase Settlement Agreement ..................................................... 21
   6.4   Liquidation Trust ....................................................................... 21
   6.5   Nonconsensual Confirmation ..................................................... 26
   6.6   Closing of Chapter 11 Cases ...................................................... 27
ARTICLE 7   DISTRIBUTIONS ................................................................................ 28
   7.1   Payment Up to Allowed Claim .................................................. 28
   7.2   Distributions ............................................................................... 28
   7.3   Time of Payment ........................................................................ 29

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

7.4    Disputed Claims Reserves ........................................................29
7.5    Estimation of Claims.................................................................29
7.6    Objections .................................................................................30
7.7    Untimely Claims .......................................................................30
7.8    Updates to Claim Register Without Objection .........................30
7.9    Fractional Cents ........................................................................30
7.10   Interest on Claims .....................................................................30
7.11   Setoffs .......................................................................................31
7.12   Waiver of Transfer Taxes .........................................................31
7.13   Time Bar to Cash Payments by Check ......................................31
ARTICLE 8  EXECUTORY CONTRACTS UNDER THE PLAN..............................31
8.1    Rejection Claims .......................................................................32
ARTICLE 9  RETENTION OF SUBJECT MATTER JURISDICTION AND CAUSES OF
             ACTION ....................................................................................32
9.1    Retention of Subject Matter Jurisdiction ..................................32
9.2    Retention of Causes of Action ..................................................34
ARTICLE 10  MODIFICATION OF PLAN..................................................................35
10.1   Prior to the Confirmation Order................................................35
10.2   After the Confirmation Order ....................................................35
ARTICLE 11   PROVISIONS  REGARDING  INJUNCTIONS,  EXCULPATION   AND
             THIRD PARTY RELEASES ....................................................35
11.1   Injunction relating to the Plan...................................................36
11.2   Releases.....................................................................................36
11.3   Exculpation ...............................................................................38
ARTICLE 12  MISCELLANEOUS PROVISIONS.......................................................39
12.1   Governing Law .........................................................................39
12.2   Notices ......................................................................................39
12.3   Conflicts....................................................................................40
12.4   Reservation of Rights................................................................40
12.5   Binding Effect ...........................................................................40

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

BICOM NY, LLC f/d/b/a Jaguar Land Rover Manhattan ("BICOM"), ISCOM NY, LLC f/d/b/a Maserati of Manhattan ("ISCOM"), and Bay Ridge Automotive Company, LLC f/d/b/a Bay Ridge Ford ("BRAC" and, together with BICOM and ISCOM, the "Debtors"), debtors and debtors-in-possession in the above Chapter 11 cases, and the Official Committee of Unsecured Creditors, hereby propose this Revised Second Amended Joint Plan of Liquidation.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, results of operations, historical financial information and properties, and for a summary and analysis of the Plan.

Claims against, and Equity Interests in, the Debtors will be treated as set forth herein. There may also be other agreements and documents, which will be filed with the Bankruptcy Court (as defined below), that are referenced in the Plan or the Disclosure Statement as exhibits and schedules. All such exhibits and schedules are incorporated into and are a part of the Plan as if set forth in full herein.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN A DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE 1

## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.      Scope of Definitions**

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1.B. of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**B.       Definitions**

**1.1      "8904"** means 8904 5th Avenue Realty, LLC.

**1.2      "ACIM"** means ACIM NY, LLC f/d/b/a Nissan of Manhattan.

**1.3      "Adequate Protection Superpriority Claims"** means the superpriority administrative expense claims under sections 503 and 507 of the Bankruptcy Code against the Debtors' Estates, on account of any diminution in value of Chase's prepetition liens arising as a result of (i) the use, sale, or lease of cash collateral or other prepetition collateral, (ii) the granting

1

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

of priming liens to secure the DIP Facility, or (iii) the imposition of the automatic stay, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, granted by Paragraph 13(b) of the Final DIP Financing Order.

**1.4** **"Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

**1.5** **"Administrative Expense Claim"** or **"Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estates and operating the Debtors' businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estates; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code.

**1.6** **"ALIM"** means ALIM NY, LLC f/d/b/a Infiniti of Manhattan.

**1.7** **"Allowed"** means with respect to Claims (a) any Claim against a Debtor, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely Filed proof of Claim has been Filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such an objection is so Filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

**1.8** **"Assets"** means all assets and property of the Estates of the Debtors, regardless of whether reflected in the financial records of the Debtors, including but not limited to: Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Causes of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**1.9** **"Avoidance Actions"** means the Causes of Action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code.

**1.10** **"Ballots"** means the ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.11** **"Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Commencement Date.

**1.12** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, having jurisdiction over the Chapter 11 Cases or such other court of competent jurisdiction as may obtain such jurisdiction in the future.

**1.13** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code and (b) the local rules of the Bankruptcy Court, in each case, as in effect on the Commencement Date.

**1.14** **"Benchmark"** shall have the meaning ascribed to it in Section 1.104 of the Plan, and shall be determined in accordance with the Chase Settlement Agreement and Section 6.4(e) of the Plan.

**1.15** **"Beneficiaries"** means Holders of Allowed Claims that are entitled to receive Distributions under the Plan and/or the Liquidation Trust.

**1.16** **"BNF Brooklyn"** means BNF Realty Brooklyn, LLC.

**1.17** **"BNF NY"** means BNF NY Realty, LLC.

**1.18** **"BNF Partners"** means BNF Partners NY, LLC, the sole Holder of the Equity Interests of BICOM and ISCOM.

**1.19** **"BNF Recoveries"** means any recoveries by the Estates or by Chase related to BNF Brooklyn, regardless of the source.

**1.20** **"Business Day"** means any day other than: (a) a Saturday; (b) a Sunday and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.21** **"Cases"** has the same meaning as the term "Chapter 11 Cases"

**1.22** **"Cash"** means legal tender of the United States of America.

**1.23** **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

3

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.24** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Cases, including through the Effective Date, that belong to the Debtors or their Estates.

**1.25** **"Chapter 11 Cases"** means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (ii) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.26** **"Chase"** means J.P. Morgan Chase Bank, N.A.

**1.27** **"Chase Released Party"** shall have the meaning ascribed to it in Article 11.2(a) of the Plan.

**1.28** **"Chase Residual Claim"** means the sum of the: (1) Adequate Protection Superpriority Claims; (2) Prepetition Obligations; and (3) Trust Funding Claim.

**1.29** **"Chase Settlement Agreement"** means the Settlement Agreement dated May 16, 2018, entered into by the Debtors, the Committee, and Chase, a copy of which is attached to the Plan as Exhibit A, as may have been modified pursuant to the terms of the Plan.

**1.30** **"Claim"** means any claim against a Debtor, regardless of whether asserted and regardless of whether known, as the term "claim" is defined in Section 101(5) of the Bankruptcy Code.

**1.31** **"Claims Objection Deadline"** shall have the meaning ascribed to it in Section 7.6 of the Plan.

**1.32** **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**1.33** **"Commencement Date"** means July 10, 2017, the date on which each Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.

**1.34** **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Cases on July 31, 2017, as may have been reconstituted from time to time.

**1.35** **"Confirmation Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.36** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

4

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.37** **"Confirmation Order"** means an order of the Court confirming the Plan under Section 1129 of the Bankruptcy Code that has become a Final Order.

**1.38** **"Consenting Holder of Priority Non-Tax Claim"** means a Holder of an Allowed Priority Non-Tax Claim of a kind specified in section 1129(a)(9)(B) of the Bankruptcy Code who (a) returned a Priority Non-Tax Claim Consent Form indicating their consent to their treatment under the Plan, (b) orally consented to their treatment under the Plan as reflected in the Declarations (as defined in the Confirmation Order), (c) is a Not-Directly Reached Non-Tax Priority Creditor (as that terms is defined in the Agran Declaration) and did not timely submit both a Non-Consent Declaration (as defined in the Confirmation Order) and, if applicable a Court Petition (as defined in the Confirmation Order), or (d) cashed the Initial Payment Check.

**1.39** **"CRO"** means Steven F. Agran in his capacity as the Debtors' Chief Restructuring Officer and any other Person that may succeed Mr. Agran as Chief Restructuring Officer.

**1.40** **"Debtor"** means one of the Debtors, in its individual capacity as a debtor and debtor in possession in its respective Chapter 11 Case.

**1.41** **"Debtors"** means collectively: BICOM NY, LLC f/d/b/a Jaguar Land Rover Manhattan, ISCOM NY, LLC f/d/b/a Maserati of Manhattan, and Bay Ridge Automotive Company, LLC f/d/b/a Bay Ridge Ford, as debtors and debtors in possession in the Chapter 11 Cases.

**1.42** **"Debtors' Principals"** means collectively: Alexander Boyko, Venjamin Nilva, and Gary Flom.

**1.43** "**DIP Claims**" means the sum of DIP Superiority Claims.

**1.44** **"DIP Facility"** means the debtor-in-possession financing facility authorized by the Final DIP Financing Order.

**1.45** "**DIP Loan Documents**" means the credit agreement authorized by the Final DIP Financing Order and any related documents and instruments delivered pursuant to or in connection therewith, as such documents may have been amended by the Final DIP Financing Order.

**1.46** "**DIP Superpriority Claims**" means the superpriority administrative expense claims against each of the Debtors, on account of the obligations of the Debtors under and with respect to the DIP Facility, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors as provided by Paragraph 11 of the Final DIP Financing Order**.**

**1.47** **"Disputed Claim"** means a Claim or any portion thereof that is not an Allowed Claim.

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.48** **"Disclosure Statement"** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code with respect to this Plan, including all exhibits, appendices, and schedules thereto, if any, as same may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

**1.49** **"Disputed Reserve"** means the aggregate amount of Cash that would have been distributed on the Distribution Date, or in subsequent Distributions, to the Holders of Disputed Claims if such Disputed Claims had in fact been Allowed on such date: (a) for liquidated Claims, in the amount asserted in a filed Proof of Claim or Administrative Claim; and (b) for unliquidated Claims, the amount estimated by the Liquidation Trustee as the maximum reasonable amount that could ultimately be allowed by the Court.

**1.50** **"Distribution"** means a distribution of Cash or other Assets of the Estates made in accordance with the Plan or the Liquidation Trust.

**1.51** **"Distribution Date"** means the date on which the Liquidation Trustee shall make a Distribution, which shall be a date selected by the Liquidation Trustee.

**1.52** **"Effective Date"** means a Business Day selected by the Debtors after which all conditions to the occurrence of the Effective Date set forth in Section 6.1 have been satisfied or duly waived.

**1.53** **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**1.54** **"Estates"** means the Debtors' chapter 11 estates, individually or collectively, as is appropriate in context, created by the commencement of and in the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

**1.55** **"Estate Litigation"** means all proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estates, Liquidation Trust, the Debtors, the Committee or by any party on behalf of or for the benefit of the Estates or Liquidation Trust, including, but not limited to, to recover upon Avoidance Actions.

**1.56** **"Exculpated Claim"** any claim (as defined in Section 101(5) of the Bankruptcy Code) or Cause of Action for any claim related to any act taken or not taken after the Commencement Date and before the Effective Date arising out of the Chapter 11 Cases related to any of the Debtors, including, without limitation, (i) the negotiation of any settlements entered into with or by any of the Debtors or any other estate representatives, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Disclosure Statement, this Plan (including any term sheets related hereto), the DIP Loan Documents, the Final DIP Financing Order, or (iii) any contract, instrument, release or other agreement or document created or entered into in connection with any such negotiations or settlements or the Disclosure Statement, this Plan, DIP Loan Documents, the Final DIP Financing Order, the filing of the

6

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, and the administration and implementation of the Plan.

**1.57** **"Exculpated Party"** shall have the meaning ascribed to it in Section 11.3 of the Plan.

**1.58** **"Executory Contract"** means a contract or unexpired lease (including amendments thereto) to which a Debtor is a party that is or previously was subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.59** **"Equity Interest"** means the legal, equitable, contractual, and other rights of any Person with respect to existing membership interests or other equity interest, or any other equity securities of, or ownership interests in, the Debtors.

**1.60** **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Case and properly served in accordance with the Bankruptcy Rules.

**1.61** **"Final DIP Financing Order"** means the *Final Order (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral of J.P. Morgan Chase Bank, N.A., (II) Granting Adequate Protection to J.P. Morgan Chase Bank, N.A., (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* entered by the Bankruptcy Court on the docket on August 8, 2017 and bearing docket number 123.

**1.62** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, reconsideration, or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, reconsideration, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, reconsideration, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, reconsideration, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.63** **"General Claims Bar Date"** means November 30, 2017 at 5:00 p.m. (Prevailing Mountain Time).

**1.64** **"General Claims Bar Date Order"** means the order entered by the Court on October 19, 2017, which established the General Claims Bar Date.

**1.65** **"General Unsecured Claim"** means any Claim against a Debtor that is not (i) a Secured Claim; (ii) entitled to priority under Sections 503 or 507 of the Bankruptcy Code; or (iii)

7

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

an Administrative Expense Claim, a DIP Claim, Priority Tax Claim, Priority Non-Tax Claim, or a Chase Residual Claim.

**1.66** **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

**1.67** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**1.68** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

**1.69** **"KAH"** means Kings Automotive Holdings, LLC f/d/b/a Kings Chrysler Dodge Jeep Ram.

**1.70** **"Liabilities"** means the liabilities of the Estates, whether or not reflected in the financial records of the Debtors.

**1.71** **"Lien"** shall have the meaning ascribed to it in Section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**1.72** **"Liquidation Trust"** means that Liquidation Trust established pursuant to this Plan in which the Liquidation Trust Assets shall vest as set forth in the Plan on the Effective Date.

**1.73** **"Liquidation Trust Advisory Board"** means the advisory board created for the Liquidation Trust and as further described in Section 6.

**1.74** **"Liquidation Trust Agreement"** means that Post-Liquidation Trust Agreement that governs the operation and management of the Liquidation Trust, a copy of which will be included in a Plan Supplement.

**1.75** **"Liquidation Trust Assets"** means all of the Assets transferred or granted to the Liquidation Trust, consisting of: (i) the Causes of Action and Estate Litigation; (ii) the Liquidation Trust Proceeds; and (iii) all other Assets of the Estates.

**1.76** **"Liquidation Trust Expenses"** means any expenses incurred by the Liquidation Trust, including, but not limited to, professional fees of the Liquidation Trust, the fees of the Liquidation Trustee, expenses incurred by any Entity retained by the Liquidation Trustee, and the expenses of the Liquidation Trust Advisory Board.

**1.77** **"Liquidation Trust Proceeds"** means the proceeds from the collection, liquidation, sale or other disposition of the Debtors' Assets as of the Effective Date, including the proceeds received from any Causes of Action, Estate Litigation, or sale of the Liquidation Trust Assets.

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.78** **"Liquidation Trustee"** means the Person vested with the authority under the Liquidation Trust to administer the Liquidation Trust, as further described in Section 6 of thia Plan.

**1.79** **"MTKN"** means MTKN, LLC ICB f/d/b/a Nissan of Mt. Kisco.

**1.80** **"Net Recoveries"** means the recoveries (after unreimbursed litigation costs and expenses, which shall include, but not be limited to, any attorneys' or other professionals' fees, including any contingency counsel fees, that are owed by the Liquidation Trust to professionals for the pursuit of the litigation claims) on Assets, including all Causes of Action.

**1.81** "Non-Voting Consent Forms" shall have the meaning ascribed to it in section I (Introduction) of the Disclosure Statement.

**1.82** **"Other Trust Beneficiaries"** all Holders of Allowed Claims for which Chase is not a Holder of the Claim.

**1.83** **"Person"** means a person as defined in section 101(41) of the Bankruptcy Code.

**1.84** **"Plan"** means this plan of liquidation under chapter 11 of the Bankruptcy Code as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.85** **"Plan Funding"** means the $100,000 previously paid by Chase under the Chase Settlement Agreement for use by the Debtors and the Committee to (i) pursue confirmation of a plan in conformity with the Chase Settlement Agreement and (ii) to protect the Estates' interests in the bankruptcy case of BNF Brooklyn.

**1.86** **"Plan Proponents"** means the Debtors and the Committee.

**1.87** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least seven (7) calendar days before the Confirmation Hearing, and any additional documents or schedules Filed before the Effective Date as supplements or amendments to the Plan Supplement, including, without limitation, the Liquidation Trust Agreement.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**1.88** **"Prepetition Obligations"** means all of Debtors' obligations, indebtedness, and liabilities to Chase arising as of the Commencement Date.

**1.89** "Priority Non-Tax Claim Ballot" means the form of Ballot that Holders of Priority Non-Tax Claims will be receiving, it is Item 1 of the Priority Non-Tax Claim Ballot/Consent Form.

9

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.90** "**Priority Non-Tax Claim Ballot/Consent Form**" shall have the meaning ascribed to it in section I (Introduction) of the Disclosure Statement.

**1.91** "**Priority Non-Tax Claim Consent Form"** means the form of consent form that Holders of Priority Non-Tax Claims will be receiving, it is Item 3 of the Priority Non-Tax Claim Ballot/Consent Form.

**1.92** "**Priority Non-Tax Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.93** "**Priority Non-Tax Claim Payment Reserve"** means $33,300.00 from the Trust Funding that shall be reserved and used to pay Holders of Priority Non-Tax Claims upon the Effective Date or as soon as practicable thereafter pursuant to Articles 4.1 – 4.3 of the Plan; provided, that if a Priority Non- Tax Claim is not Allowed at the time the Initial Payment Checks are mailed by the Liquidation Trust, its pro rata share shall be reserved until such time as the Claim is either Allowed or not Allowed. If an Initial Payment Check is not cashed within 160 days from its issuance it shall be void and shall revert to the Liquidation Trust to be used in accordance with Article 6.4(d)(2).

**1.94** "**Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code, including any Secured Claim which would otherwise meet the description of an unsecured Claim of a governmental unit under Section 507(a)(8) of the Bankruptcy Code but for the secured status of that Claim.

**1.95** "**Professional"** means any person or Entity employed by the Debtors or the Committee in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.96** "**Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**1.97** "**Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

**1.98** "**Pro Rata"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class. Until all Disputed Claims are Resolved, Disputed Claims shall be treated as Allowed Claims in the amount used for calculation of the Disputed Reserve for the purpose of calculating Pro Rata Distributions of the Assets.

10

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.99** **"Proof of Claim"** means a Claim Filed against a Debtor in any of the Chapter 11 Cases.

**1.100** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims.

**1.101** **"Rejected Contract"** means an Executory Contract (i) previously rejected by the Debtors or (ii) deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**1.102** **"Rejection Claim"** means any Claim arising from a Rejected Contract, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with Section 502(b)(6) of the Bankruptcy Code or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with § 502(b)(7). A Rejection Claim shall constitute a General Unsecured Claim.

**1.103** **"Rejection Claims Bar Date"** means the deadline to File a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

**1.104** **"Released Parties"** has the same meaning as Exculpated Party, which for the avoidance of doubt, does not include the Debtors' Principals or any related parties, affiliates of the Debtors, including but not limited to, BNF Brooklyn, BNF Partners, MTKN, White Plains, BNF NY, IFC, KAH, ACIM, ALIM, and 8904.

**1.105** **"Releasing Party"** means, collectively and in each case in their, his, her or its capacity as such: (a) the Released Parties; (b) each Holder of a Claim who voted to accept the Plan; and (c) each Holder of a Claim who did not vote to accept this Plan but checked the box on the applicable Ballot indicating that they, he, she or it opt(s) to grant the releases provided in this Plan; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities'/Entity's or Persons'/Person's successors and assigns.

**1.106** **"Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

**1.107** **"Reserved Funds"** means any Net Recoveries that would otherwise be available to Other Trust Beneficiaries that the Liquidation Trustee elects to reserve to fund the pursuit of specific Causes of Action (as opposed to trust administrative expenses).

11

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**1.108 "Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, and as such schedules and statements have been or may be supplemented or amended from time to time.

**1.109 "Secured Claim"** means an Allowed Claim that is secured by a Lien (which is valid, perfected and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

**1.110 "Trust Funding"** means the $200,000 that Chase is required to contribute under the Chase Settlement Agreement to the Liquidation Trust upon the Effective Date and which amount shall be used by the Liquidation Trust for the purposes set forth in the Chase Settlement Agreement and in Section 6.4(d) of this Plan and to fund the Priority Claim Payment Reserve; provided, that such $200,000 amount,is subject to reduction by 50% of any BNF Recoveries, up to a reduction of $100,000, as set forth in the Chase Settlement Agreement and in Section 6.4(d) of this Plan.

**1.111 "Trust Funding Claim"** means the Claim held by Chase arising from the Trust Funding.

**1.112 "Trust Waterfall"** means the priority of payments to be made by the Liquidation Trust to Holders of Allowed Claims from the proceeds of the Net Recoveries as follows: First, for the payment of Liquidation Trust Expenses; Second, 65% of the remainder shall be paid to Chase until the DIP Superpriority Claims are paid in full and 35% of the remainder may be paid to Other Trust Beneficiaries or reserved, in the discretion of the Liquidation Trustee (with the consent of the Liquidation Trust Advisory Board), to fund the pursuit of additional Assets; Third, after the DIP Superpriority Claims have been paid in full, then the next $1,100,000 of the remainder shall be paid to Other Trust Beneficiaries or reserved, in the discretion of the Liquidation Trustee (with the consent of the Liquidation Trust Advisory Board), to fund the pursuit of additional Assets (the "Benchmark")[2] prior to any distribution being made on account of the Chase Residual Claim;[2] Fourth, after the Benchmark has been reached, then 50% of the remainder shall be paid to Chase until the Chase Residual Claim is paid in full and 50% of the remainder may be paid to the Other Trust Beneficiaries or reserved, in the discretion of the Liquidation Trustee (with the consent of the Liquidation Trust Advisory Board), to fund the pursuit of additional Assets; Fifth, after the Chase Residual Claim has been paid in full, then 100% of the remainder may be paid to Other Trust Beneficiaries or reserved, in the discretion of the Liquidation Trustee (with the consent of the Liquidation Trust Advisory Board), to fund the pursuit of additional Assets; provided, however, that any funds available to Chase hereunder shall be distributed as soon as practicable following receipt and may not be reserved by the Liquidation Trust absent Chase's consent;

---

[2]    Whether the Benchmark has been met will be determined as provided for in the Chase Settlement Agreement and in section 6.4(e) of the Plan.

12

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

provided, further, that all Distributions to the Other Trust Beneficiaries shall be made in accordance with the priority scheme set forth in the Bankruptcy Code.

**1.113 "Unclaimed Property"** means any Distributions that are returned to the Liquidation Trustee or Liquidation Trust as: (i) undeliverable to a Beneficiary, or (ii) unclaimed by a Beneficiary, as further described in Section 7.2 hereto.

**1.114 "Unimpaired"** means an Allowed Claim or Equity Interest that is not "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

**1.115 "United States Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the Southern District of New York.

**1.116 "United States Trustee Fees"** means all fees payable on or before the Effective Date to the United States Trustee, including pursuant to 28 U.S.C. § 1980, together with interest, if any, pursuant to 31 U.S.C. § 3717.

**1.117 "Voting Agent"** means JND Corporate Restructuring, retained as the Debtors' claims and noticing agent, or its duly appointed successor.

**1.118 "White Plains"** means White Plains Auto Company, LLC f/d/b/a White Plains Nissan.

**1.119 "Initial Payment Check"** shall mean the check issued by the Liquidating Trust to Holders of Priority Non-Tax Claims for their *pro rata* share in Cash of the Priority Non-Tax Claim Payment Reserve.

## C.    Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

13

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

## D.    Computation of Time.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article II hereof. These unclassified Claims are Unimpaired and treated as follows:

### 2.1    Administrative Expense Claims

(a)    **Administrative Expenses**. Each Holder of an Allowed Administrative Expense Claim other than Professional Fee Claims and United States Trustee Fees will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter ; (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; provided that if the amount of such Administrative Expense Claims at the time ultimately allowed or due exceeds the amount of Cash held by the Estate then the Debtors are proposing that such claims be paid from recoveries by the Litigation Trust (if or when made) subject to the Trust Waterfall. (iii) at such time and upon such terms as may otherwise be agreed upon by such Holder and the Debtors; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

(b)    **Statutory Fees**. All fees of the Debtors payable pursuant to Section 1930 of title 28 of the United States Code shall be paid (i) if due and owing, on or prior to the Effective Date by the Debtors, and (ii) if due and owing after the Effective Date, as and when due from the proceeds of the Liquidation Trust.

(c)    **Professional Fee Claims**. Each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. The failure to timely File the fee application shall result in the Professional Fee Claim being forever barred and

14

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

discharged. A Professional Fee Claim with respect to which a fee application has been properly and timely filed pursuant to this Article 2 shall be treated and paid only to the extent allowed by a Final Order. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Chapter 11 Cases has not been approved by the Bankruptcy Court. To the extent a Professional Fee Claim is not paid in full upon the Effective Date, such Professional agrees to payment on account of such claim after the Effective Date from the Liquidation Trustee pursuant to the Trust Waterfall and in accordance with the priority of payments required by the Bankruptcy Code. Any professional fees and reimbursements or expenses incurred by the Liquidation Trust subsequent to the Effective Date may be paid without application to the Bankruptcy Court and subject to the approval of the Liquidation Trustee. These post-Effective Date fees and expenses will be paid by the Liquidation Trust.

(d)  **Administrative Expense Bar Date**. Requests for payment of Administrative Expense Claims must be filed by the Administrative Expense Bar Date. Holders of Administrative Expense Claims that do not File such requests by the Administrative Expense Bar Date shall be forever barred from asserting such Administrative Expenses against the Debtors or the Liquidation Trust or any of their Assets.

## 2.2    Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Priority Tax Claim shall be entitled to its *Pro Rata* share of Cash from the Liquidation Trust, subject to the Trust Waterfall.

## 2.3    Allowed DIP Claims

The DIP Claims are Allowed in full upon the Effective Date. Upon the Effective Date, on account of the Allowed DIP Claims, Chase shall be entitled to its share of the Net Recoveries pursuant to the Trust Waterfall.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1**    Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtors. A Claim or Equity Interest is placed in a particular Class for the purposes of voting on this Plan and or receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code, respectively, have not been classified and their treatment is set forth in Article 2 above.

15

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**3.2**    The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan are as follows:

| Class | Debtor | Claims/Interests | Status | Entitled to Vote |
|---|---|---|---|---|
| 1A | BICOM | Priority Non-Tax Claims | Impaired | Yes |
| 2A | BICOM | Chase Residual Claim | Impaired | Yes |
| 3A | BICOM | General Unsecured Claims | Impaired | Yes |
| 4A | BICOM | Equity Interest | Impaired | No (Deemed to reject) |
| 1B | ISCOM | Priority Non-Tax Claims | Impaired | Yes |
| 2B | ISCOM | Chase Residual Claim | Impaired | Yes |
| 3B | ISCOM | General Unsecured Claims | Impaired | Yes |
| 4B | ISCOM | Equity Interest | Impaired | No (Deemed to reject) |
| 1C | BRAC | Priority Non-Tax Claims | Impaired | Yes |
| 2C | BRAC | Chase Residual Claim | Impaired | Yes |
| 3C | BRAC | General Unsecured Claims | Impaired | Yes |
| 4A | BRAC | Equity Interest | Impaired | No (Deemed to reject) |

# ARTICLE 4

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

The following treatment set forth in this Article 4 shall be accorded to Allowed Claims against the Debtors and Interests in the Debtors:

### 4.1    Class 1A:   Priority Non-Tax Claims (BICOM)

Class 1A consists of Consenting Holders of Priority Non-Tax Claims against BICOM. On the Effective Date (or as soon as practicable thereafter), unless otherwise agreed by a Holder of a

16

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Priority Non-Tax Claim, each Holder of a Priority Non-Tax Claim shall be entitled to receive its *Pro Rata* share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims and Priority Tax Claims entitled to greater priority than an Allowed Priority Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim and Priority Tax Claim have agreed to waive their right to a Distribution. In addition, upon the Effective Date, or as soon as practicable thereafter (or if a claim objection is filed, upon Allowance of such Claim), Holders of Non-Tax Priority Claims shall receive their *pro rata* share in Cash of the Priority Non-Tax Claim Payment Reserve.

### 4.2    Class 1B:  Priority Non-Tax Claims (ISCOM)

Class 1B consists of Consenting Holders of Non-Tax Claims against ISCOM. On the Effective Date (or as soon as practicable thereafter), unless otherwise agreed by a Holder of a Priority Non-Tax Claim, each Holder of a Priority Non-Tax Claim shall be entitled to receive its Pro Rata share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims and Priority Tax Claims entitled to greater priority than an Allowed Priority Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim and Priority Tax Claim have agreed to waive their right to a Distribution. In addition, upon the Effective Date, or as soon as practicable thereafter (or if a claim objection is filed, upon Allowance of such Claim), Holders of Priority Non-Tax Claims shall receive their pro rata share in Cash of the Priority Non-Tax Claim Payment Reserve.

### 4.3    Class 1C: Priority Non-Tax Claims (BRAC)

Class 1C consists of Consenting Holders of Priority Non-Tax Claims held against BRAC. On the Effective Date (or as soon as practicable thereafter), unless otherwise agreed by a Holder of a Priority Non-Tax Claim, each Holder of a Priority Non-Tax Claim shall be entitled to receive its Pro Rata share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims and Priority Tax Claims entitled to greater priority than an Allowed Priority Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim and Priority Tax Claim have agreed to waive their right to a Distribution. In addition, upon the Effective Date, or as soon as practicable thereafter (or if a claim objection is filed, upon Allowance of such Claim), Holders of Priority Non-Tax Claims shall receive their pro rata share in Cash of the Priority Non-Tax Claim Payment Reserve.

### 4.4    Class 2A: Chase Residual Claim (BICOM)

17

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Class 2A consists of the Allowed Chase Residual Claim against BICOM. The Chase Residual Claim against BICOM is Allowed in full upon the Effective Date.  Chase shall be entitled to its share of the Liquidation Trust Assets pursuant to the Trust Waterfall on account of the Allowed Chase Residual Claim.

### 4.5    Class 2B: Chase Residual Claim (ISCOM)

Class 2B consists of the Allowed Chase Residual Claim against ISCOM. The Chase Residual Claim against ISCOM is Allowed in full upon the Effective Date.  Chase shall be entitled to its share of the Liquidation Trust Assets pursuant to the Trust Waterfall on account of the Allowed Chase Residual Claim.

### 4.6    Class 2C: Chase Residual Claim (BRAC)

Class 2C consists of the Allowed Chase Residual Claim against BRAC. The Chase Residual Claim against BRAC is Allowed in full upon the Effective Date.  Chase shall be entitled to its share of the Liquidation Trust Assets pursuant to the Trust Waterfall on account of the Allowed Chase Residual Claim.

### 4.7    Class 3A:   General Unsecured Claims (BICOM)

Class 3A consists of Allowed General Unsecured Claims against BICOM. Unless otherwise agreed by a Holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall be entitled to receive its *Pro Rata* share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims entitled to greater priority than an Allowed General Unsecured Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim, Priority Tax Claim, and Priority Non-Tax Claim have agreed to waive their right to a Distribution.

### 4.8    Class 3B:   General Unsecured Claims (ISCOM)

Class 3B consists of Allowed General Unsecured Claims against ISCOM.   Unless otherwise agreed by a Holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall be entitled to receive its *Pro Rata* share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as further provided by this Plan and the

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims entitled to greater priority than an Allowed General Unsecured Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim, Priority Tax Claim, and Priority Non-Tax Claim have agreed to waive their right to a Distribution.

### 4.9    Class 3C:    General Unsecured Claims (BRAC)

Class 3C consists of Allowed General Unsecured Claims against BRAC. On the Effective Date, unless otherwise agreed by a Holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall be entitled to receive its *Pro Rata* share in Cash from the Liquidation Trust Assets, subject to the Trust Waterfall, as provided by this Plan and the Liquidation Trust Agreement, provided that the face amount of all Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims entitled to greater priority than an Allowed General Unsecured Claim have been paid in full or either (i) to the extent not paid in full, funds sufficient to satisfy the face amount have been placed in a segregated reserve, or (ii) the Holder of each Administrative Expense Claim, Priority Tax Claim, and Priority Non-Tax Claim have agreed to waive their right to a Distribution.

### 4.10    Class 4A: Equity Interest (BICOM)

Class 4A consists of the Equity Interest of BICOM. The holder of the Equity Interest in BICOM will not receive any Distribution on account of such interest except to the extent funds remain after payment in full of the Unclassified Claims and Classes 1 through 3 Claims with interest as provided in section 7.10 of this Plan.  On the Effective Date, all Class 4A Equity Interests shall be cancelled, extinguished, and of no further force and effect, without the payment of any monies or consideration to the holder of Class 4A Equity Interest except as provided herein.

### 4.11    Class 4B: Equity Interest (ISCOM)

Class 4B consists of the Equity Interest of ISCOM. The holder of the Equity Interest in ISCOM will not receive any Distribution on account of such interest except to the extent funds remain after payment in full of the Unclassified Claims and Classes 1 through 3 Claims with interest as provided in section 7.10 of this Plan. On the Effective Date, all Class 4B Equity Interests shall be cancelled, extinguished, and of no further force and effect, without the payment of any monies or consideration to the holder of Class 4A Equity Interest except as provided herein.

### 4.12    Class 4C: Equity Interest (BRAC)

Class 4C consists of the Equity Interest of BRAC. The holder of the Equity Interest in BRAC will not receive any Distribution on account of such interest except to the extent funds remain after payment in full of the Unclassified Claims and Classes 1 through 3 Claims with interest as provided in section 7.10 of this Plan.  On the Effective Date, all Class 4C Equity

19

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Interests shall be cancelled, extinguished, and of no further force and effect, without the payment of any monies or consideration to the holder of Class 4A Equity Interest except as provided herein.

## ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1    Voting Classes

Classes 1 through 4 are Impaired under the Plan. The Holders of Classes 1 through 3 Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

### 5.2    Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

### 5.3    Deemed Rejection of Plan

Equity Interests in Class 4 are Impaired, and Holders of such Equity Interests shall receive no Distributions. The Holders in such Classes are deemed to have rejected this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

## ARTICLE 6

## MEANS OF IMPLEMENTATION OF THE PLAN

### 6.1    Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Plan Proponents:

   a.    Entry of the Confirmation Order and the Confirmation Order having become a Final Order.

   b.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Court shall be pending.

   c.    The Liquidation Trust Agreement shall have been executed and the Liquidation Trust shall have been established.

20

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

d.      The Liquidation Trustee and the Liquidation Trust Advisory Board shall be authorized to assume the rights and responsibilities provided in the Plan and the Liquidation Trust Agreement.

e.      Chase shall have provided the Trust Funding to the Liquidation Trust.

**6.2     Vesting of Assets of the Estate**

On the Effective Date, subject only to the terms of this Plan, all Assets of the Debtors and the Estates, wherever situated, shall vest in the Liquidation Trust, free and clear of all Liens, Claims, encumbrances, and interests except as otherwise provided in the Plan.

**6.3     Chase Settlement Agreement**

a.      The Plan constitutes the Plan Proponents' request to authorize and approve, pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Chase Settlement Agreement.  If this Plan conflicts with any aspect of the Chase Settlement Agreement, then the Plan controls to the extent of the conflict.

b.      <u>BNF Recoveries</u>.  Any BNF Recoveries will be shared as follows: (i) the Estates of the applicable Debtors shall receive 100% of the first $200,000, (ii) Chase shall receive 50% and the estates of the applicable Debtors shall receive 50% of the next $300,000; (iii) for all BNF Recoveries over $500,000, Chase shall receive 70% and the Estates of the applicable Debtors shall receive 30% until the DIP Superpriority Claims and the Chase Residual Claim are paid in full. If the Liquidation Trust has been created prior to receipt of BNF Recoveries, then the Estates' interest will be received by and/or contributed to the Liquidation Trust. The funding received by the Liquidation Trust shall be distributed in accordance with the Trust Waterfall; provided, however, that none of the BNF Recoveries due to the Estates pursuant to this section shall be paid to Chase under the Trust Waterfall.

c.      <u>No Double-Recovery</u>.  For the avoidance of doubt, to the extent that the DIP Superpriority Claims or the Chase Residual Claim is indefeasibly satisfied in full in cash as a result of payment of such claims or recoveries thereon from any source, then such claims shall not be entitled to any further distributions from the Liquidation Trust.

**6.4     Liquidation Trust**

a.      <u>Execution of the Liquidation Trust Agreement</u>. On or before the Effective Date, the Liquidation Trustee and the Debtors on behalf of themselves and the Estates, will execute the Liquidation Trust Agreement

b.      <u>Appointment of Liquidation Trustee</u>.  Craig Jalbert shall be appointed as the Liquidation Trustee.  The Liquidation Trustee shall have the powers, duties, and obligations set forth in this Plan and in the Liquidation Trust Agreement. After the Effective Date, all actions

21

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

required of and/or otherwise specified herein to be performed by the Debtors shall be performed by the Liquidation Trustee, or its designee, in the name of, and on behalf of, the Debtors and the Estates. The Liquidation Trustee shall be authorized to execute documents on behalf of the Debtor and the Estates.

     c.     <u>Duties and Responsibilities of Liquidation Trustee</u>.  The Liquidation Trustee shall owe a fiduciary duty to the Beneficiaries of the Liquidation Trust.  The Liquidation Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work product doctrine, or any other privilege and the Liquidation Trustee shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege. These duties, responsibilities and obligations include, but are not limited to, the following:

1. receive, manage, invest, supervise and protect the Liquidation Trust Assets;

2. pay taxes or other obligations incurred by the Liquidation Trust;

3. prepare and file tax returns on behalf of the Debtors, the Estates, and the Liquidation Trust, including the right to request a determination of tax liability as set forth in section 505 of the Bankruptcy Code;

4. request and require as a condition to receiving a distribution under the Plan a W-9 federal tax forms for any party who is entitled to receive distributions on account of a Claim or Equity Interest;

5. administer final employee benefits, if any, and effect the final administration and termination of all related programs, if any;

6. prosecute and resolve Causes of Action, if any;

7. pay all United States Trustee fees;

8. file status reports with the Court on a quarterly basis including a summary of any disbursements or receipts;

9. adhere to any duty of care, loyalty or other duty imposed or imputed by law;

10. respond to inquiries of creditors; and

11. collect and liquidate the Liquidation Trust Assets.

     d.     <u>Trust Funding</u>.

1. On or before the Effective Date, Chase shall provide the Trust Funding to the Liquidation Trust.

22

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

2.   The Trust Funding may be used by the Liquidation Trustee exclusively to fund (i) trust expenses, (ii) litigation costs, (iii) legal and other professional fees related to (a) the transition of the responsibilities and obligations of the Debtors and the Committee to the Liquidation Trust, including but not limited to administrative matters related thereto and the Liquidation Trustee's performance of his duties, (b) pursuing any claim objections, motions or adversary proceedings, pending on the Effective Date except that claim objections or schedule amendments relating to Non-Tax Priority Claims shall be included whether or not filed prior to the Effective Date, and (c) educating the Liquidation Trustee and/or the Liquidation Trust's contingency counsel with regard to the investigations already performed, claims that may be objected to, and records preserved, up to an amount of $40,000 in the aggregate, (iv) legal fees of contingency counsel to provide an initial evaluation of the Litigation Trust's Causes of Action or to prepare, file, serve, and prosecute the Litigation Trust's Causes of Action up to an amount of $30,000, (v) the Priority Non-Tax Claim Payment Reserve, and (vi) the Trust Portion of the Backstop Funds. The Trust Funding shall not be used to fund (i) legal fees (except as specified in the previous sentence), (ii) administrative expenses incurred by any of the Estates on or prior to the Effective Date, or (iii) distributions to trust beneficiaries. Chase's Trust Funding obligations shall be reduced by $1 for every $2 of BNF Recoveries up to a maximum reduction of $100,000. If Chase has advanced Trust Funding prior to the receipt of BNF Recoveries, then Chase shall be reimbursed and/or retain the amount necessary to reduce its Trust Funding by 50%, up to $100,000.  Any unused portion of the Plan Funding shall become part of the Trust Funding; provided, however, (i) the Plan Funding component shall not be subject to reduction based on the BNF Recoveries and (ii) it shall be available for any permitted use by the liquidating trust notwithstanding the restrictions otherwise applicable to Trust Funding.

3.   Any Plan Funding that is contributed to the Trust Funding shall not become part of the Chase Residual Claim.

e.     Benchmark.   In determining whether the Benchmark has been met, any distributions to Other Trust Beneficiaries received pursuant to the split of the remainder of Net Recoveries under the second level of the Trust Waterfall and pursuant to the BNF Recoveries as specified in Section 6.3(b) of the Plan shall not be included.

f.     Reserved Funds.  The distributable funds available to Chase under the Trust Waterfall shall be reduced by the amount of any Reserved Funds plus the accrued simple interest on the Reserved Funds at the then applicable federal judgment rate. The reduction of the amount of distributable funds available to Chase under this subparagraph shall be calculated in a manner to avoid duplicative reimbursement of non-Chase beneficiaries for their contribution of Reserved Funds for the pursuit of specific estate causes of action. Prior to utilizing Reserved Funds, the

23

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Liquidation Trustee shall offer Chase the opportunity to make a loan of the required funds on substantially similar terms.

        g.        <u>Preservation of Causes of Action</u>.  Except as expressly provided in the Plan, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Liquidation Trust shall exclusively retain and may enforce, as the representative of the Estates under section 1123(b)(3)(B), and the Debtors expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any claims, demands, rights, and Causes of Action that the Debtors or the Estates may hold against any Person or Entity, including Avoidance Actions, which shall vest in the Liquidation Trust; provided, however, that claims under section 547 of the Bankruptcy Code for preferential transfer to unrelated third parties are waived.  For the avoidance of doubt, claims under 547 of the Bankruptcy Code and any and all other claims that arose prior the Commencement Date or after the Commencement Date and prior to the Effective Date against the Debtors' Principals or any related parties, affiliates of the Debtors, including but not limited to, BNF Brooklyn, BNF Partners, MTKN, White Plains, BNF NY, IFC, KAH, ACIM, ALIM, and 8904 shall be expressly preserved.  Accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of, or in connection with, the confirmation, consummation of effectiveness of this Plan. The Liquidation Trustee or its successors or assigns exclusively may pursue such retained claims, demands, rights, and Causes of Action.

        h.        <u>Reservation of Rights</u>.  With respect to any Avoidance Action that the Liquidation Trustee abandons, the Liquidation Trustee reserves all rights, including the right under section 502(d) of the Bankruptcy Code to use defensively the abandoned Avoidance Claim as a basis to object to all or any part of a Claim against the Estate asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer.

        i.        <u>The Liquidation Trust Advisory Board</u>.

        1.        <u>Appointment of the Liquidation Trust Advisory Board</u>.  On the Effective Date, the Liquidation Trust Advisory Board shall be formed pursuant to the Liquidation Trust Agreement. The Liquidation Trust Advisory Board shall be comprised of three (3) members. Chase shall appoint, in its sole discretion, one of the members of the Liquidation Trust Advisory Board. The other two initial members of the Liquidation Trust Advisory Board shall be selected by the Plan Proponents. Until the DIP Superpriority Obligations and Residual Claim are paid in full, Chase shall have (i) the right to appoint one of the members of the Board and (ii) shall have consent rights over the selection of the trustee and any replacement trustee.

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

2.       <u>Authority of the Liquidation Trust Advisory Board</u>. The Liquidation Trustee shall report all material matters to and seek approval for all material decisions from the Liquidation Trust Advisory Board. The Liquidation Trust Advisory Board shall act on all matters by majority vote and may authorize the Liquidation Trust to invest its corpus in prudent investments other than those described in Bankruptcy Code Section 345 of the Bankruptcy Code, and may require a fidelity bond from the Liquidation Trustee in a reasonable amount. The Liquidation Trust Advisory Board shall have the right at any time, with cause, to remove the Liquidation Trustee and appoint a successor Liquidation Trustee, as may be determined by the Liquidation Trust Advisory Board; <u>provided</u>, <u>however</u>, that until the DIP Superpriority Claims and Chase Residual Claim are paid in full, Chase's consent will be required to appoint a successor Liquidation Trustee (if the initial Liquidation Trustee resigns or is removed).

j.       <u>Retention of Professionals</u>. The Liquidation Trust may, subject to the approval of the Liquidation Trust Advisory Board, retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as he shall consider advisable without necessity of approval of the Court, including the retention of the initial Liquidation Trustee's firm Verdolino & Lowery to handle administrative needs of the Liquidation Trust. Persons who served as Professionals in the Chapter 11 Cases prior to the Effective Date may act as Liquidation Trustee (if a successor is appointed) or may be retained by the Liquidation Trustee as his professionals. The Liquidation Trustee may pay professionals in the ordinary course from amounts held in the applicable trust.

k.       <u>Exculpation and Indemnification</u>. Neither the Liquidation Trustee, nor the firms or companies representing it, or any of their employees, professionals or agents, shall in any way be liable for any acts of any of their employees, professionals or agents, except for acts undertaken in bad faith, gross negligence or willful misconduct, in the performance of their respective duties. The Liquidation Trustee and its employees, professionals, and agents shall be indemnified by the Liquidation Trust as and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them under this Plan and/or the Liquidation Trust Agreement except for acts undertaken in bad faith, with gross negligence or willful misconduct.

l.       <u>Removal of Trustee</u>.   Pursuant to the Plan or the Liquidation Trust Agreement, the Liquidation Trustee may be removed by the Liquidation Trust Advisory Board with cause. If the Liquidation Trustee is removed with cause, he shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under the Plan, the Liquidation Trust Agreement or otherwise. Under the Plan and the Liquidation Trust Agreement, the term "cause" shall mean (a) the Liquidation Trustee's gross negligence or failure to perform his duties under the applicable Liquidation Trust Agreement, or (b) the Liquidation Trustee's misappropriation or embezzlement of any assets belonging to the trust or the proceeds thereof. If a Liquidation Trustee is unwilling or unable to serve by virtue of  inability to perform its duties under the Liquidation

25

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Trust Agreement, due to death, illness, or other physical or mental disability, subject to a final accounting, such trustee shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidation Trustee. Upon removal of the Liquidation Trustee, the Liquidation Trust Advisory Board shall promptly appoint a successor Liquidation Trustee; provided, however, that until the DIP Superpriority Claims and Chase Residual Claim are paid in full, Chase's consent will be required to appoint a successor Liquidation Trustee (if the initial Liquidation Trustee resigns or is removed).

      m.     <u>Investing by the Liquidation Trustee</u>. The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) (i) as permitted by Bankruptcy Code Section 345, and (ii) in other prudent investments as authorized by the Liquidation Trust Advisory Board; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities. The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3).

      n.     <u>Costs and Expenses of the Liquidation Trust</u>. All Liquidation Trust Expenses shall be the sole responsibility of and paid exclusively from the Liquidation Trust. The Liquidation Trustee shall have no personal obligation for Liquidation Trust Expenses. The Liquidation Trust is the successor to the Debtors' rights to books and records.

      o.     <u>Federal Income Tax Treatment of the Liquidation Trust</u>.    For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that the Liquidation Trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

      p.     <u>Sale of Assets Free and Clear</u>. Any Liquidation Trust Asset may be sold by the Liquidation Trustee, by auction, private sale or otherwise pursuant to Section 363 of the Bankruptcy Code without further order of the Bankruptcy Court and the Confirmation Order shall constitute authorization for the Liquidation Trustee to consummate such sales and shall be binding on all parties-in-interest. Any sale of such assets shall be free and clear of all Claims, Liens, encumbrances, and interests with any such Claims, Liens, encumbrances, and interests attaching to proceeds of such sale.

**6.5    Nonconsensual Confirmation**

If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to amend the Plan or undertake to have the Court confirm the Plan under section

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

1129(b) of the Bankruptcy Code or both as discussed more fully in Article X of the Disclosure Statement. With respect to any impaired classes of Claims that are deemed to reject the Plan, the Plan Proponents shall request the Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

### 6.6    Closing of Chapter 11 Cases

When each Disputed Claim filed against the Debtors have become an Allowed Claim or a disallowed Claim, and all Cash has been distributed in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules and to request the Bankruptcy Court to enter the Final Decree.

### 6.7    Dissolution of Committee

The Committee shall continue in existence until the Effective Date, and until the Effective Date shall continue to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate. Notwithstanding anything in Article 6 of the Plan, the Committee and its Professionals shall continue to have standing and a right to be heard following dissolution of the Committee solely with respect to: (a) Professional Fee Claims of the Committee's Professionals arising prior to the Effective Date; and (b) any appeals of the Confirmation Order.  All reasonable fees and expenses incurred therein shall be paid by the Liquidation Trustee to the extent of available Assets, as applicable, without further order of the Court.

### 6.8    Dissolution of the Debtors and Resignation of its Managers and Officers

From and after the Effective Date, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Liquidation Trustee on behalf of the Debtors may file with the appropriate governmental authority or authorities a certificate or statement of dissolution referencing the Plan and any and all required tax returns or other documents required by this Plan or applicable law. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, to withdraw its business operations from any states in which the Debtors were previously conducting business. Upon the Effective Date, all of the Debtors' managers and officers, including the CRO, shall be deemed to have been terminated by the Debtors without the necessity of any further action or writing, and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date to the Debtors or its creditors under the Plan, the Liquidation Trust Agreement, or applicable law. Under no circumstances shall such parties be entitled to any compensation from

27

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

the Debtors or the Liquidation Trustee for services provided after the Effective Date, unless such individuals are subsequently employed by the Liquidation Trustee to assist him in the consummation of the Plan or in his administration of the Liquidation Trust.

### 6.9    Grouping of Debtors for Convenience

The Plan may group the Debtors together for the purposes of, *inter alia*, describing treatment under the Plan, confirmation of the Plan, and making Distributions. Unless set forth in the Plan, this grouping shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets. The Plan is not premised upon and shall not cause the substantive consolidation of the Debtors or any non-Debtor affiliate, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

## ARTICLE 7

## DISTRIBUTIONS

### 7.1    Payment Up to Allowed Claim

Notwithstanding any other provisions of the Plan, no Holder of a Claim shall be entitled to receive Distributions aggregating more than its Allowed Claim, nor shall any Holder of a Claim receive any Distributions under the Plan until its Claim has been Allowed.

### 7.2    Distributions

Distributions to Holders of Allowed Claims shall be made by the Liquidation Trustee: (a) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee after the date of any related Proof of Claim, or (c) at the addresses reflected on the Schedules if no Proof of Claim has been filed and the Debtors or the Liquidation Trustee have not received a written notice of a change of address. If any Distribution of a Holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtors or the Liquidation Trustee are notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Any undeliverable distribution made shall be held for redistribution under this Plan. All claims for undeliverable Distributions must be made no later than 90 days after the Distribution is made, after which date all Unclaimed Property and uncashed checks for any reason shall revert to the Liquidation Trust free of any restrictions thereon, and the Claim of any Holder

28

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors or the Liquidation Trustee or any professional retained by the foregoing to attempt to locate any holder of an Allowed Claim.

### 7.3    Time of Payment

Except as may be provided herein, all Distributions provided for by the Plan will be made as soon as it is feasible in the reasonable discretion of the Debtors or the Liquidation Trustee, as the case may be.  One or more Distributions may be made pursuant to the provisions of the Plan.

### 7.4    Disputed Claims Reserves

On any date that Distributions are to be made on account of Allowed Claims and after making all Distributions to be made on any such date under the Plan, the Liquidation Trustee shall make a reasonable reserve on account of Disputed Claims and shall adjust the reserve periodically, which shall be no less than the amount of the Disputed Claims multiplied by the Pro Rata Distribution that have been made on account of Allowed Claims as of such date. Such Disputed Claim reserve shall be administered by the Liquidation Trustee. The reserve shall be closed and extinguished by the Liquidation Trustee upon the determination that all Distributions and other dispositions of Cash, or other Distributions required to be made under the Plan have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claim reserve, all Cash shall be subject to redistribution, in accordance with the provisions of the Plan.

### 7.5    Estimation of Claims

The Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claims, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustee, as the case may be, has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidation Trustee may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

### 7.6     Objections

All parties in interest shall have the right to make and File objections to Claims subsequent to the Effective Date; provided, however, all such objections by any party other than the Liquidation Trustee shall be filed no later than 30 days after the Effective Date (the "Claim Objection Deadline"). The Liquidation Trustee shall have the right to make and File objections at any time prior to the final distribution. All objections shall be litigated to Final Order unless approval of a settlement or compromise of a claim objection is obtained pursuant to Bankruptcy Rule 9019; provided, however, the Liquidating Trustee has authority to compromise, settle, otherwise resolve or withdraw any objection without further order of the Bankruptcy Court.

### 7.7     Untimely Claims

Except as otherwise expressly provided in this Plan, any Claim not deemed Filed pursuant to Section 1111(a) of the Bankruptcy Code or timely Filed pursuant to the Bankruptcy Code, Bankruptcy Rules, any applicable order of the Bankruptcy Court or the provisions of the Plan, shall (a) not be treated as an Allowed Claim for voting purposes and Distributions and (b) may be expunged from the Claims register in the Chapter 11 Cases without notice, motion or order.

### 7.8     Updates to Claim Register Without Objection

Any Proof of Claim that has been paid or satisfied, in whole or in part, or any Proof of Claim that has been amended or superseded, may be marked as satisfied, in whole or in part, or amended (as applicable) on the Claims Register by the Claims Agent at the directions of the Debtors or Liquidation Trustee, as applicable, without a Claims Objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that the Debtors or the Liquidation Trustee, as applicable, shall provide 30 days' notice of any of the foregoing modifications to the Claims Register to the Holder of any affected Claims during which period the Holder may object thereto.

### 7.9     Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down. No distributions of less than $25.00 will be made on account of Allowed Claims, and the Liquidation Trustee shall contribute any balance in the Liquidation Trust that is not distributed to non-profit 503(c) organization "Access to Bankruptcy Court," or a similar non-profit organization selected by the Liquidation Trustee.

### 7.10     Interest on Claims

Interest shall not accrue on Claims, and no Holder of a Claim shall be entitled to interest accruing on any Claim unless provided pursuant to the terms of the Plan or the Bankruptcy Code

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

(for example, Priority Tax Claims); provided, however, that no Distributions shall be made to Equity Interests until all General Unsecured Claims have been paid in full with interest as provided under applicable law. Distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for federal income tax purposes) of such Claims, and then, to the extent the consideration exceeds the principal amount of such Claims, to any portion of such Claims for accrued but unpaid interest.

### 7.11    Setoffs

Except as otherwise provided in the Plan, the Liquidation Trustee may set off against any Claim and the Distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidation Trustee of any right of setoff against the holder of such Claim.

### 7.12    Waiver of Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of security or the making or delivery of an instrument of transfer under the Plan after the Effective Date shall not be taxed under any law imposing a stamp tax or similar tax.

### 7.13    Time Bar to Cash Payments by Check

Checks issued by the Liquidation Trustee on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance thereof, except those returned as undeliverable which shall be dealt with in accordance with Section 7.2 of the Plan. After such date, all Claims in respect of void checks shall be forever barred, and the proceeds of such checks shall revest in the Liquidation Trust and be subject to redistribution, as appropriate, in accordance with the provisions of the Plan.

## ARTICLE 8

## EXECUTORY CONTRACTS UNDER THE PLAN

### 8.1    Executory Contracts

All Executory Contracts (other than those previously rejected or assumed and assigned pursuant to an order of the Bankruptcy Court) shall be deemed rejected on the Effective Date or such other date as may be agreed to by the Debtors and the counterparties thereto or ordered by the Bankruptcy Court, and the Debtors and respective counterparties shall be relieved of any further obligation to perform under such agreements.  Rejected Contract counterparties who do not oppose this proposed treatment by opposing confirmation of the Plan by filing and serving a

31

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

written objection with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules shall be deemed to have consented to rejection of such Executory Contract. This Plan shall constitute a request pursuant to Bankruptcy Code Sections 1123(b)(2) and 365(a) and the Confirmation Order (except as otherwise provided therein) shall constitute an order of the Bankruptcy Court approving the rejection by the Debtors of all Executory Contracts that have not otherwise been rejected or assumed by order of the Bankruptcy Court.

### 8.1    Rejection Claims

If the rejection of a Rejected Contract gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be classified as a Class 3 General Unsecured Claim; provided, however, that any Claim arising from the rejection of a Rejected Contract pursuant to this Article 8 herein shall be forever barred and shall not be enforceable against the Debtors, the Estates, or their properties, unless a proof of Claim is Filed and served on the Debtors by the Rejection Claims Bar Date.

## ARTICLE 9

## RETENTION OF SUBJECT MATTER
## JURISDICTION AND CAUSES OF ACTION

### 9.1    Retention of Subject Matter Jurisdiction

The Bankruptcy Court shall continue to have subject matter jurisdiction, of all matters, and over all Persons arising out of, and relating to, the Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.    to consider and rule on the compromise and settlement of any Claim against or Cause of Action on behalf of the Debtors or the Estates;

b.    to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

c.    to hear and determine any timely objections to Administrative Expense Claims or to proofs of claim filed, both before and after the Effective Date, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Claim, in whole or in part;

d.    to hear and determine any and all applications for the allowance of Professional Fees as provided for in the Plan;

32

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

e.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

f.    to issue such orders in aid of execution of the Plan, in accordance with section 1142 of the Bankruptcy Code;

g.    to estimate Claims for all purposes under the Plan;

h.    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan, including any exhibit thereto, or in any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

i.    to hear and determine matters concerning state, local and federal taxes, including but not limited to those in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, with respect to the Debtor or any Person;

j.    to compel the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

k.    to enforce remedies upon any default under the Plan;

l.    to enforce, interpret and determine any disputes arising in connection with any orders, stipulations, judgments and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

m.    to resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, or any Person's obligations incurred in connection herewith;

n.    to determine any other matters that may arise in connection with or relate to the Plan, the Liquidation Trust Agreement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Liquidation Trust Agreement, or the Disclosure Statement;

o.    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the occurrence of the Effective Date or enforcement of the Plan;

p.    to issue such orders as may be necessary or appropriate in aid of confirmation and/or to facilitate consummation of the Plan;

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

q.  to determine such other matters as may be provided for in the Confirmation Order or other orders of the Bankruptcy Court as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

r.  to hear and determine (a) all motions, applications, adversary proceedings, and contested and litigated matters pending on the Effective Date, and (b) all Claims by or against the Debtor arising under the Bankruptcy Code or non-bankruptcy law, if made applicable by the Bankruptcy Code, whether such Claims are commenced before or after the Effective Date, including, but not limited to, Causes of Action and the Chapter 5 Claims;

s.  to hear and determine all motions and applications filed by the Litigation Trustee in accordance with the Litigation Trustee's obligations and duties under the Litigation Trust and the Plan, including, but not limited to, applications under Bankruptcy Rule 2004;

t.  to hear and determine all Causes of Action, to the extent not described above;

u.  to hear and determine any Claims asserted by: (i) suppliers of goods or services to any of the Debtors; and (ii) any shareholder, insider or affiliate of any of the Debtors, for any actions or omissions prior to the Commencement Date;

v.  to  hear and determine any other matter authorized by applicable law; and

w.  to enter a Final Decree.

**9.2    Retention of Causes of Action**

The Plan preserves all Causes of Action, except for the Causes of Action released in the Chase Settlement Agreement, the Confirmation Order, or the Plan or otherwise expressly released or assigned by an order of this Court, and provides for them to be transferred to the Liquidation Trust on the Effective Date of the Plan.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Chase Settlement Agreement, the Plan, or the Confirmation Order, the Liquidation Trust (as successor to the Debtors and the Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action of the Debtors or their Estates, including, without limitation, all Avoidance Actions and all Causes of Action listed in Article VI(l) of the  Disclosure Statement.

**PLEASE TAKE NOTICE THAT, WITH THE EXCEPTION OF THOSE CAUSES OF ACTION THAT ARE RELEASED OR WAIVED UNDER THE TERMS OF THE PLAN, THE CHASE SETTLEMENT AGREEMENT, THE CONFIRMATION ORDER, OR OTHER ORDER OF THE BANKRUPTCY COURT, ALL CAUSES OF ACTION OF THE DEBTORS**

34

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**AND THEIR ESTATES, WHETHER OR NOT SPECIFIED HEREIN, WILL BE PRESERVED AND TRANSFERRED TO THE LIQUIDATION TRUST PURSUANT TO THE PLAN.**

**THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE PLAN PROPONENTS INTEND FOR THE PLAN TO PRESERVE AND TRANSFER TO THE LIQUIDATION TRUST ANY AND ALL CAUSES OF ACTION HELD BY THE DEBTORS AND THEIR ESTATES AS OF THE EFFECTIVE DATE OF THE PLAN EXCEPT AS EXPRESSLY NOTED HEREIN.**

## ARTICLE 10

## MODIFICATION OF PLAN

### 10.1    Prior to the Confirmation Order

The Plan Proponents may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to entry of the Confirmation Order. The Plan Proponents shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Code or Bankruptcy Rules or order of the Bankruptcy Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim of such Holder.

### 10.2    After the Confirmation Order

After the entry of the Confirmation Order and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Plan Proponents may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Code or Bankruptcy Rules or an order of the Bankruptcy Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim of such holder.

## ARTICLE 11

35

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

## PROVISIONS REGARDING INJUNCTIONS, EXCULPATION
## AND THIRD PARTY RELEASES

### 11.1    Injunction relating to the Plan

The Assets of the Debtors shall be used for the satisfaction of expense obligations and the payment of Claims only in the manner set forth in this Plan and shall not be available for any other purpose.  All Persons and Entities who have held, hold or may hold Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtors, the Liquidating Trust or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such Claims or Interests and regardless of whether such Person has voted to accept the Plan, and any successors, assigns or representatives of such Persons, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.

In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or the Confirmation Order, all Person and Entities who have held, hold or may hold Claims or Interests that are fully satisfied, settled, or released under the terms of this Plan (as modified by the Confirmation Order), or any Claim that is exculpated pursuant to the terms of the Plan, shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims, except for the receipt of the payments or Distributions that are contemplated by the Plan.

### 11.2    Releases

a.    ***Chase Release***.  **As of the Effective Date, Chase and its subsidiaries, affiliates, successors and assigns, current and former officers, directors, members, managers, principals, employees, agents, financial advisors, attorneys, accountants, consultants, insurers, reinsurers, underwriters, representatives and other professionals, in each case in their capacity as such (each, a "Chase Released Party") shall be deemed to be and hereby are forever released and discharged by the Debtors, the reorganized debtors, and their respective Estates from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations, rights, suits, demands, damages, actions, causes of action, debts, judgments, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, direct or indirect, derivative, in law, equity or otherwise relating to any of the Debtors, any Estate or any current or former Assets of any Debtor and taking place on or before the Effective Date; provided, however, that Chase shall not be released from, and shall continue to be bound to perform its obligations under the Chase Settlement Agreement as incorporated into the Plan. Each Debtor, the Committee and any other representative of any Debtor's estate, hereby irrevocably covenant to refrain from, directly**

36

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

or indirectly, asserting any Claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against any Chase Released Party based upon any Claim, obligation, right, suit, demand, damage, action, cause of action, debt, judgment, remedy or liability released above. Further, no estate rights of any kind against any Chase Released Party have been assigned or transferred to any person or entity.

b.  *Debtors' Release of Claims Against Managers, Officers, Directors and Professional of the Debtors*. As of the Effective Date, Debtors shall be deemed to have released all claims in connection with or related to any action or omission taking place after the Commencement Date and prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Committee, against the Debtors' present and former managers, officers, employees, agents, financial advisors, attorneys and professionals; provided, however, the foregoing shall not waive or release any causes of action arising out of (i) any contractual obligations owing by any such party (ii) any Avoidance Actions or (iii) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such party.

C.  *Debtors' Release of Claims Against Creditor Representatives*. As of the Effective Date, Debtors shall be deemed to have released all claims in connection with or related to any action or omission taking place after the Commencement Date and prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Committee and its members, against the Committee and its members, or any of their respective employees, agents, financial advisors, attorneys and professionals; provided, however, the foregoing shall not waive or release any causes of action arising out of (i) any contractual obligations owing by any such party (ii) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such party.

D.  *Releasing Parties' Release of Claims Against Released Parties*. As of the Effective Date, in consideration for the obligations of the Debtors and Chase under this Plan, and the consideration and other contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with this Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged any and all liabilities whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of

37

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Equity Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, in connection with, relating to, or arising out of, out-of-court restructuring efforts or the Chapter 11 Cases related to any of the Debtors, including, without limitation, (i) the negotiation of any settlements entered into with or by any of the Debtors or any other estate representatives, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Disclosure Statement, this Plan (including any term sheets related hereto), the DIP Loan Documents, the Final DIP Financing Order, or (iii) any contract, instrument, release or other agreement or document created or entered into in connection with any such negotiations or settlements or the Disclosure Statement, this Plan, DIP Loan Documents, the Final DIP Financing Order, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, and the administration and implementation of the Plan; provided, however, the foregoing shall not waive or release any causes of action arising out of (i) any contractual obligations owing by any such party or (ii) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such party.

e.      For the avoidance of doubt and notwithstanding anything to the contrary in this Plan or otherwise, nothing herein shall release any claims that arose prior to the Effective Date against the Debtors' Principals or any related parties, affiliates of the Debtors, including but not limited to, BNF Brooklyn, BNF Partners, MTKN, White Plains, BNF NY, IFC, KAH, ACIM, ALIM, and 8904 and such claims shall be expressly preserved.

**11.3    Exculpation**

As of the Effective Date, each (i) Debtor, (ii) the Committee, (iii) each member the Committee, (iv) each Chase Released Party, (v) the respective financial advisors, attorneys, accountants, consultants and other professionals of each person or entity referred to in parts (i) through (iv) of this sentence (each an "<u>Exculpated Party</u>") shall neither have nor incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of each Debtor's Chapter 11 Case. No Holder of a Claim or Equity Interest or any other party-in-interest, including their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, shall have any right of action against any Exculpated Party relating to, or arising out of the Exculpated Claims, except for such Exculpated Party's own willful misconduct or gross negligence; <u>provided</u>, <u>however</u>, that nothing in the Plan shall, or shall be deemed to, release or exculpate the

38

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**Exculpated Parties with respect to their obligation or covenants arising pursuant to the Plan.**

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1    Governing Law**

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR OTHER FEDERAL LAW IS APPLICABLE, OR TO THE EXTENT A SCHEDULE OR EXHIBIT HERETO OR INSTRUMENT, AGREEMENT OR OTHER DOCUMENT EXECUTED UNDER THE PLAN PROVIDES OTHERWISE, THIS PLAN, THE RIGHTS, DUTIES AND OBLIGATIONS ARISING UNDER THIS PLAN, AND ANY CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS PLAN OR THE TRANSACTIONS CONTEMPLATED BY THIS PLAN (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, SHALL IN ALL RESPECTS BE GOVERNED BY AND INTERPRETED, CONSTRUED AND DETERMINED IN ACCORDANCE WITH, THE INTERNAL LAWS OF NEW YORK WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISION THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION.

**12.2    Notices**

All notices, requests and demands to be effective shall be in writing (including by facsimile transmission and email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors:

**Carl Marks Advisory Group LLC**
900 Third Avenue, 33rd Floor
New York, NY 10022
Attn: Steven F. Agran, CTP, CIRA
Email: sagran@carlmarks.com

**Wilk Auslander LLP**
1515 Broadway
43rd Floor
New York, NY 10036
Attn:  Eric J. Snyder, Esq.
Eloy A. Peral, Esq.

39

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

Email:  esnyder@wilkauslander.com
eperal@wilkauslander.com

To the Committee:

**Moses & Singer LLP**
405 Lexington Avenue
New York, New York 10174
Attn: Alan E. Gamza, Esq.
      Jessica K. Bonteque, Esq.
Email: agamza@MOSESSINGER.COM
       jbonteque@MOSESSINGER.COM

To the Liquidation Trustee:

Craig Jalbert
Verdolino & Lowey, P.C.
124 Washington Street
Suite 101
Foxboro, MA 02035
Email: cjalbert@vlpc.com

### 12.3    Conflicts

In the event of any conflict or inconsistency between the terms of (a) the Plan (including all exhibits to the Plan), and (b) the Disclosure Statement, the terms of the Plan shall control.

### 12.4    Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Bankruptcy Case are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Case shall be bound or deemed prejudiced by any such concession or settlement.

### 12.5    Binding Effect

The rights, benefits and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person (including, but not limited to, any trustee appointed for Debtor under Chapters 7 or 11 of the Bankruptcy Code). The terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated:  May 8, 2019

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1

**DEBTORS:**

BICOM NY, LLC

By: /s/ Steven F. Agran
Name: Steven F. Agran, CTP, CIRA
Its:    Chief Restructuring Officer

BAY RIDGE AUTOMOTIVE COMPANY, LLC

By:    /s/ Steven F. Agran
Name: Steven F. Agran, CTP, CIRA
Its:    Chief Restructuring Officer

ISCOM NY, LLC

By:    /s/ Steven F. Agran
Name: Steven F. Agran, CTP, CIRA
Its:    Chief Restructuring Officer

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR EACH OF THE DEBTORS:**

By:    /s/ Ray Lahey
Name: Ray Lahey
Its:    Chairperson

41

01062205.1
01066772.1
01067497.1
01067927.1
01068252.1
01071858.1
01072069.1